· A. M. BRITTON ET AL. v. THE CITY OF FORT WORTH.

No. 3162.

1. **Estoppel—Settlement with City Treasurer.**—It is the duty of sureties of a bonded city officer to keep watch upon their principal, and not for the city to keep watch upon him for the benefit of the sureties; so that the approval by the city council of the city treasurer's reports does not amount to an assertion that the treasurer actually had in possession the money reported as on hand. It was not error, therefore, to sustain exceptions to an answer by sureties, sued on their bond as such, pleading as an estoppel such approval.

2. **Mode of Estimating Damages.** — Sureties upon the city treasurer's general

bond were sued for the default of their principal.   The treasurer had kept the general fund and the school fund together.   The aggregate default was known, so was the aggregate of both funds, and of the school fund for which the officer was liable.   *Held*, the sureties not being liable for the school fund, and the two funds having been intermingled by the treasurer, a pro rata of the loss should be borne by each fund.   The sureties were liable for the proportional loss to the general fund.

APPEAL from Tarrant.   Tried below before Hon. R. K. Boykin. The opinion states the case.

*Ross, Chapman & Ross,* for appellants.—   The court erred in sustaining plaintiff's exception to defendants' last special plea, because said plea showed a valid defense.   2 Herm. on Estop., sec. 1222; 73 N. Y., 238; Moran v. Commrs., 2 Black, 722.

There can be no doubt but that the facts set out in said plea would operate as an estoppel were the transactions between natural persons. Suppose A should be on B's promissory note as surety, payable to C, and C should at the maturity of the note, B being solvent, tell A that B had paid off the note and that he did not owe him any sum, and afterwards B should die, and upon investigation it should be found that B's estate was insolvent, and that C through his own carelessness was mistaken when he told A that the note had been satisfied, C in an action against A would undoubtedly be estopped from denying that the debt was paid.   Such are the facts set out in the plea in question, except that instead of a note we have a bond, and in place of natural persons the party to be estopped is a municipal corporation.

In the case of Miland v. Gilman, 24 Wisconsin, 39, the court uses the following language:   "But of late years, much more than formerly, the doctrine of estoppel, most wholesome and just in its operations when properly applied, has been extended to these municipal corporations so as to bind and conclude them by their own act and acquiescence and the acts and acquiescence of their officers wherever an estoppel would exist in the case of natural persons.   It is now well settled that as to matters within the scope of their powers and the powers of their officers such corporations may be estopped upon the same principles and under the same circumstances as natural persons."

Mr. Herman in his work on Estoppel, volume 2, page 1365, says that the true test is as follows:   "That one can not do indirectly what can not be done directly, and where there is no power or authority vested by law in officers or agents no void act can be cured by aid of the doctrine of estoppel."   And further from the same author, same volume and page:   "Where there is power and it is irregularly exercised, or there are defects and omissions in exercising the authority conferred by law, the doctrine of equitable estoppel may well be applied by the courts."

We submit that there can be no doubt but that the city had the power

:and that it was its duty to ascertain through its council the status of its treasurer's accounts, and to actually know whether or not he had all moneys on hand before his report was received and adopted and before he was permitted to qualify as his own successor. Why, then, will not the doctrine of estoppel apply? They had the power and it was their duty to ascertain whether or not he had the money on hand; they pretended to exercise that power and to discharge that duty and reported that he had the money. Concede that he did not have the money, was not the fact that they did not ascertain it attributable to the negligence and omission of the council in their investigations? They had the power, it was their duty; they negligently and carelessly performed that duty, and if the judgment herein is affirmed the appellants, and they alone, will suffer on account of these omissions and negligence of the plaintiff's officers and agents. Upon what principle of law can it be said that a city can through its agents make false representations to another's injury and then not be liable therefor?

*Cobbs & Courtney,* for appellee.— The city of Fort Worth was under no obligation to appellants to be sufficiently vigilant to prevent their principal from embezzling appellee's funds. The obligation in this regard was entirely on the other side. Neither could the city be estopped by reason of the negligence of its officers in failing to properly examine Nichols' accounts. Bennett v. Loan Assn., 57 Texas, 72; Brandt on Sure., sec. 474; Murf. on Offi. Bonds, secs. 415, 661; Mutual Assn. v. Price, 26 Am. Rep., 703; United States v. Kirkpatrick, 9 Wheat., 720; Trent County v. Harley, 10 East, 34; Naves v. Rowles, 14 East, 509; Pittsburg Co. v. Schaeffer, 59 Pa. St., 350; People v. Ruddell, 4 Wend., 574.

HENRY, ASSOCIATE JUSTICE.—This suit was brought by the city of Fort Worth to recover money charged to have been received by John Nichols as treasurer of said city and misapplied by him.

Nichols qualified as treasurer on the 6th day of April, 1883, and his first term of office expired on the 21st day of April, 1885, at which time he was re-elected treasurer and gave a new bond. He died in August, 1885. Appellants were sureties upon his first bond.

We copy the following statement of the pleadings of the defendants from the brief of appellants' attorneys filed in this court:

"Defendants all answered by filing general demurrer and general denial, and appellants filed the following special plea, to-wit: And now come all the defendants herein, and for further answer say that on, to-wit, the —— day of March, 1884, the said John Nichols, being then treasurer of the city of Fort Worth, and defendants being then his sureties, made his annual report as he was legally bound to do, wherein he gave a statement of the sums received and paid out by him as such treas-

urer of the city's moneys, and the amount of such money remaining in his hands at the time of filing said report. That the city council of said city, by their agents duly appointed and authorized, examined said report and the state of said Nichols' account as such treasurer, and thereupon said city, by its council sitting and acting as such and having authority so to do, accepted and approved said report and settled with said Nichols in full for the year preceding the date of filing said report; and by such acceptance and settlement the said council acknowledged and published that at the date of said settlement the said Nichols was not a defaulter, and was not indebted to the said city in any sum, and that the said Nichols in fact had in his hands the amount of money belonging to said city as represented in said report. That afterwards on, to-wit, the 6th day of March, 1885, the said Nichols filed his annual amended report showing the condition of his accounts with said city and the amount of money in his hands belonging to said city, the amount as therein shown being all that the said Nichols was owing to said city according to said report; and the said city did then and there, through its agents duly appointed for said purpose, examine said report and the state of said Nichols' account as such treasurer, and thereupon said city council, sitting and acting as such and having authority so to do, accepted and approved said report and made a full settlement with said Nichols as treasurer up to said —— day of March, 1885; and by such settlement these defendants aver that the said city acknowledged, agreed, and published that the said Nichols was not a defaulter, and was not indebted to said city in any sum, and had then in his hands as treasurer the full amount shown in his said report.

"That the city council of said city had the right, power, and opportunity, and it was its legal duty directly or through its agents, to examine into the accounts of said Nichols as aforesaid to see if they were correct, and if the said Nichols had the sums in his hands belonging to said city as shown in said report, and had full power and authority under the law to make settlement with said treasurer on plaintiff's behalf. That these defendants had not the means nor the opportunity to examine into the said Nichols' accounts and finances to ascertain what sums he in fact might have on hand belonging to said city, but were compelled to trust to the said city in conducting such settlement with said treasurer to make all necessary investigation, and the right to rely on said city, and did so rely upon it for such purpose; and when the said city council made the settlements aforesaid with said treasurer these defendants had the right to believe and did believe that such settlements were final and correct, and that they were discharged from all liability on his said bond up to the date of said settlement last mentioned.

"Defendants further aver that after the settlements aforesaid between the plaintiff and the said treasurer Nichols on, to-wit, the 10th day of April, 1885, the said Nichols was re-elected treasurer of said city of Fort

Worth, and filed his bond and was duly installed into office; that the city council of said city accepted the bond of said Nichols for said new term as treasurer, and permitted him to enter upon and discharge the duties of treasurer of said city for said second term until on, to-wit, the 19th day of August, 1885, when Nichols died; and then only did plaintiff pretend to have discovered the conversions and embezzlements and indebtedness of the said Nichols as charged in plaintiff's petition. That the said Nichols at the time of his death was insolvent, but at the time when the aforesaid settlements were made the said Nichols was solvent and had property out of which defendants could and would have secured and indemnified themselves if they had known or been informed of the existence of any defalcation or misappropriation of moneys belonging to plaintiff as charged in plaintiff's petition. Defendants further say that within a few days after the settlement hereinabove set forth, to-wit, on the 14th day of April, 1885, the said Nichols' term of office expired as treasurer of said city, and the said Nichols having been re-elected to the same office gave his bond for said new term, which was then accepted and approved by said council; thereupon the liability of these defendants ceased, and defendants aver that there were no defalcations by said Nichols whatever after said settlement and before the date of said new bond. These defendants aver that now should plaintiff recover against them on said bond they would be wholly remediless, and that such a recovery would be a practical fraud on their rights; wherefore they pray that plaintiff be estopped from further pursuing its suit against these defendants; and defendants pray for all the relief to which they may be entitled in the premises."

The court sustained an exception to this plea, and appellants complain of the ruling. We think the exception was properly sustained. It was incumbent upon the sureties to keep a watch upon their principal for the protection of the city, rather than the duty of the city to keep such watch on its treasurer for the benefit of his sureties.

We do not think that the approval by the city of the treasurer's reports amounted to an assertion that the treasurer actually held in his hands the money so appearing by the reports.

The verdict of the jury was for $9000 principal and $2096 interest.

The statement made from the books showed that the total amount of the unexpended balance in the hands of the treasurer on the 20th day of April, 1885, was $23,299.33, of which $10,417.29 belonged to the school fund. But the evidence indicates that before the last mentioned date the treasurer had paid out on account of the school fund the sum of $8966.73, for which he had not been credited on the books. The last amount being deducted left his total deficiency $14,332.60, of which the deficiency to the school fund was the sum of $1450.56.

It was conceded that the sureties upon the bond in suit were not liable for the school fund. Broad v. The City of Paris, 66 Texas, 119. The

money received by the treasurer was kept in one mass and there was no means of distinguishing to what particular fund any part of it belonged.

The record contains evidence of the misapplication of $10,070 by the treasurer previous to the 20th day of April, 1885. While the evidence shows that there was a deficit in his accounts at the date of his death in August following, it is not made certain by it that a greater deficiency than the amount mentioned ($10,070) was chargeable to the sureties on the first bond.

In that state of the evidence and of the law it became necessary to instruct the jury as to the distribution of the deficiency existing on the 20th day of April, 1885, between the general fund and the school fund. The court charged the jury as follows:

"The defendants would not be liable for any school moneys that may have come into his hands as said treasurer that he may have failed to pay over at said time to himself as his own successor. The evidence shows that John Nichols during his term as treasurer preceding April 21, 1885, received both school moneys or money on the school fund and moneys on other funds. In determining or estimating what money he should have paid over at the time of the approval of his second bond as treasurer on the 21st of April, 1885, to himself as his own successor, you will find what moneys of plaintiff before that time came into his hands as treasurer, both on the school funds and the other funds, and what moneys he had disbursed or paid out for plaintiff on all such funds, both school and other funds. You will then find what balance, if any, he should have had in his hands at said time on all such funds. You will then find what balance he should have had on hand at said time of the school fund so received and disbursed by him, and also what balance he should have had on hand of all the moneys on the other funds so received and disbursed by him. You will then find what amount of money from all the funds, both school and other, he did actually have on hand at such time and turn over to himself as his own successor. If after complying with the above directions and instructions you should find that John Nichols had on hand at the time of the approval of his second bond and turned over to himself as his own successor a less amount than he should have had and paid over, you will next consider and ascertain what amount of deficit or shortage was on funds other than school funds (and such other funds will for convenience be determined the general fund). You will look to the proportion that existed between the school fund, if any, that should have been on hand and paid over, and between the general fund, if any, that should have been on hand and paid over at the time of the approval of his second bond. To give you a definite and plain mode of calculation, you may use the following rule: As the whole amount of funds, both school and general, that should have been on hand at said time is to the amount of general funds that should have been on hand, so is the difference between said whole amount and the amount that

actually was on hand to the amount to be deducted from the general fund that should have been on hand. After making the deduction you will have the deficit, if any, on the general fund or the amount, if any, to be found for the plaintiff, to which will be added interest as before mentioned and directed. If you should find from the evidence before you that John Nichols at the time of the approval of his second bond had on hand and turned over to himself as his own successor the moneys that he should have had on hand and turned over to himself as his own successor, under the foregoing instructions you will find for the defendant. You are the sole judges of the weight of the evidence and credibility of the witnesses. Presumption of law is that officers do their duty, and that John Nichols had on hand and paid over to himself as his own successor at the time of the approval of his second bond all the moneys of plaintiff he should or ought to have had on hand and paid over at the said time, and it is incumbent on plaintiff to prove its case in every material portion thereof by a preponderance of evidence."

As the funds were intermingled in the hands of the treasurer it is impossible to say that any sum less than the whole that was misappropriated by the treasurer belonged exclusively to either fund. In such a case we think a pro rata appropriation of it to both funds is the correct rule. The court clearly stated the principle to the jury. The direction as to the mathematical process of applying the rule was incorrect. But the verdict shows that the principle was followed by the jury, and their verdict, if in anything different to what it would have been under a correct application of the principle, was for somewhat less than the plaintiff was entitled to recover.

We do not find in the charge any error for which we think the judgment should be reversed, and it is affirmed.

*Affirmed.*

Delivered October 21, 1890.